

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN

AUSTIN 11, TEXAS

ATTORNEY GENERAL

Honorable Sam K. Hooker
County Attorney
Red River County
Clarksville , Texas

Dear Sir:

Opinion No. 0-4823
Re: Right of the State of Texas to
escheat or forfeit property of an
alien under the facts set forth.

Pursuant to your letter of recent date addressed to Mr. Sellers, we have given the subject matter thereof our careful consideration. From your letter we quote a part, substituting blanks for the identifying parts, as the law questions are not affected by the omissions:

"It will be very much appreciated if you will inform me as to the right of the State of Texas to have escheated to it the property owned by an alien under the following set of facts.

". . . was born May 3, 1886, in . . . . Germany, and came to the United States on or about June 14, 1902. He has resided in Red River County for approximately twenty-five years and about ten years ago he took out his first letters of naturalization, but never pursued the proceedings any further.

"He acquired in . . . . (recent years) several hundred acres of land in Red River County, Texas, which he still owns. He also owns quite a bit of personal property . . . . it was my intention to institute escheat proceedings as required of me under Art. 172.

"Title 5 (R.C.S. 1925) which covers Arts. 166-177 appears to be all of the statutes governing land owned by aliens. I believe Art. 176 is the one under which the suit would be filed but I am not able to determine whether or not Art. 167 contains an exception by which he may be able to defeat the proceedings. I have not found any decisions on the question but it appears to me that Art. 176 is a procedural statute that all aliens must comply with regardless of Art. 167. I do not know, however, and would like to have your opinion thereon. What is your advice about the personal property considering Art. 177?

". . ." (Emphasis and parentheses ours)

It is noted first that you say the person involved "took out his first letters of naturalization"about ten years ago. We presume you mean he filed his declaration of intention to become a naturalized citizen of this country under the provisions of Sec. 731, 8 U.S.C.A., and that he never followed this with a petition for naturalization as authorized by Sec. 732, Ibid. It is perhaps needless to observe in this connection that before suit is brought, the nature and status of whatever proceedings were instituted should be carefully checked.

The real question presented is the effect of Article 167 R.C.S., or whether such Article "contains an exception by qhich he may be able to defeat the proceedings," by which you mean proceedings instituted to enforce the provisions of Article 176, R.C.S.

The first Article of Title 5, R.C.S., 1925, specifies that:

"No alien or alien corporation shall acquire any interest, fight or title either legal or equitable in or to any lands in the State of Texas, except as hereinafter provided."

Article 167, supra, reads as follows:

"This title shall not apply to any land now owned in this State by aliens, not acquired in violation of any law of this State, so long as it is held by the present owners; nor to lots or parcels of land owned by aliens in any incorporated town or city of this State, nor to the following classes of aliens who are, or who shall become, bona fide inhabitants of this State, so long as they shall continue to be bona fide inhabitants of this State;

"1. Aliens who were bona fide inhabitants of this State on the date on which this Act becomes a law.

"2. Aliens eligible to citizenship in the United States who shall become bona fide inhabitants of this State, and who shall, in conformity with the naturalization laws of the United States, have declared their intention to become citizens of the United States.

"3. Aliens who are natural born citizens of nations which have a common land boundary with the United States.

"4. Aliens who are citizens or subjects of a nation which now permits citizens of this State to own land in fee in such country."

We next consider Article 176: "All alien(s) and all alien corporations now owning lands in this State shall on or before the last day of January 1926 file a written report under oath, with the clerk of the county court of the county in which such land is located, giving the name, age, occupation, personal description, place of birth, last foreign residence and allegiance, the date and place of arrival of said alien in the United States, and his or her present residence and post-office address, and the length of time of

of residence in Texas, and the foreign prince, potentate, State or sovereignty, of which the alien may at the time be a citizen or subject, and the number of acres of land owned by such alien in such county, the name and number of the survey, the abstract and certificate number, the name of the person or persons from whom acquired, and shall either describe said land by metes and bounds, or refer to recorded deed in which same is so described, which report shall be known as 'REPORT OF ALIEN OWNERSHIP.' All aliens and and all alien corporations hereafter purchasing, or in any manner acquiring lands located in Texas, shall, within six months after such purchase, or acquisition, file with the county clerk of the county in which such land is located, a 'Report of Alien Ownership,' in terms as above required. Any alien or alien corporation who may now own land in Texas, or who may hereafter acquire any land in Texas, by purchase or otherwise, who does not within the time prescribed in this article, file the reports herein provided for, shall be subject to have such land forfeited and escheated to the State of Texas. The reports herein required shall, when the alien is a minor or insane person, be filed by the parent or guardian of such alien. The county clerk of each county shall file and record the reports above provided for in a separate volume, to be entitled 'RECORD OF ALIEN OWNED LANDS,' for said county. The recording of such reports shall be paid by the alien owner." (Emphasis ours)

In 1941, the Texas Legislature enacted House Bill No. 993, printed as Chapter 439, General and Special Laws, 47th Legislature, p. 704. Article 176A was thus placed in Title 5, supra, and reads as follows:

"All aliens and all alien corporations that have not, within the time prescribed by Article 175, filed the reports therein provided for, may file such reports on or before the last day of December, 1941, and such filing shall be deemed compliance with Article 176. Added Acts 1941, 47th Leg., p. 704, ch. 439, § 1."

The emergency clause of the last quoted legislation contains the following language:

"Emergency: The fact that there have been conflicting opinions rendered by the Attorney General as to what aliens are required to file Alien Ownership Reports under Article 176 makes the law uncertain and has cast a cloud upon the title of aliens who did not file Alien Ownership Reports within the time prescribed by that Article . . (etc.)"

We are unable to find that the present law has been judicially construed by any appellate courts, hence, we have carefully examined the "conflicting opinions" of the Attorney General of this State as reflected in the above quotation from the emergency clause of the 1941 Act of the Legislature.

Most of the statutes quoted above, particularly Article 176 requiring report and ownership of land by aliens, have been considered in three conference opinions of this Department. Opinion No. 2466, Book 58, p. 352,

dated December 2, 1922, appearing at page 513 of the Biennial Report of the Attorney General for 1922-1924, held that land belonging to aliens exempted by what is now Article 167 were not required to be reported and registered under the provisions of what is now Article 176. This ruling was reversed by opinion No. 2667, Book 62, page 78, dated February 19, 1927, reported at page 402 of the Attorney General's Report for 1926-1928, wherein it was held that "all aliens owning lands in this State, whether they come within the exception noted in Article 167 or not, including corporations of the kind just referred to, are required by the terms of Article 176 to file written reports under oath with the clerk of the county court of the county in which such land is located in the terms and under conditions stated by law." This letter opinion was expressly approved and followed by conference opinion No. 2990, dated July 6, 1936, reported at page 161 of the Attorney General's Report for 1934-1936.

Our opinion No. O-2521 reviewed the conference opinions as in the preceding paragraph, and states: "We have given careful study to these opinions and believe that the reasoning and conclusions of the last two opinions are correct." (Conference opinions 2667, 2990, supra.)

We adhere to the principles of law announced by the conference opinions last approved and reaffirm the statement of opinion No. O-2521. For your guidance we append hereto complete copies of all three conference opinions, as well as the opinion No. O-2521 written during the present administration of this office.

With reference to your last question concerning the personal property, we quote Article 177: "Aliens shall have an enjoy in this State such rights as to personal property as are or shall be accorded to citizens of the United States by the laws of the Nation to which such alien shall belong or by the treaties bu such Nation with the United States."

Since this country is at this time engaged in war with the German Rich, we have no means of ascertaining what rights, if any, are accorded citizens of the United States in Germany. We wish to point out, however, that Article 177 is apparently the only Article of the Code relating to personal property. The remainder of Title 5 describes the rights, privileges and duties in respect to lands. The procedural statutes relate to actions with respect to lands. The statute authorizing suit (Art. 172) restricts such suits to "lands in this State."

Prior to the several amendments to the Title, it was held in Wiederanders vs. State, 64 Tex. 133, that since no mode of declaring land title forfeitures was provided by law, any attempted forfeitures were ineffectual. It appears that under the present state of the law the same principles would control at this time in any action seeking forfeiture of personal property.

Yours very truly

BW:imp:egw
Encl.
APPROVED SEP 30, 1942
/s/ GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

By /s/ Benjamin Woodal
Assistant